IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD F. ROTH, JR., | : |
| Petitioner, | : |
| v. | : Civil Action No. 18-913-RGA |
| TRUMAN MEARS, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
| Respondents.[1] | : |

## MEMORANDUM OPINION

Richard F. Roth, Jr. *Pro se* Petitioner.

Maria T. Knoll, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

August 5, 2021
Wilmington, Delaware

---

[1] Warden Truman Mears replaced former Warden Robert May, an original party to this case. *See* Fed. R. Civ. P. 25(d).


ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Richard F. Roth, Jr. is an inmate in custody at the Sussex Correctional Institution in Georgetown, Delaware. Petitioner filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (D.I. 1; D.I. 6) The State filed an Answer in opposition. (D.I. 12) For the reasons discussed, the Court will dismiss the instant proceeding as barred by the limitations period prescribed in 28 U.S.C. § 2244.

## I. BACKGROUND

Petitioner and "three codefendants were charged in connection with a series of robberies occurring in the Newport and Stanton [Delaware] area in December 1998. The codefendants were Richard Roth, Sr. [Petitioner's father], James Anderson, and Moises Ordorica." *Roth v. State*, 788 A.2d 101, 103 (Del. 2001). On June 16, 2000, a Delaware Superior Court jury found Petitioner guilty of two counts of first degree murder, four counts of first degree robbery, three counts of second degree conspiracy, and six counts of possession of a firearm during the commission of a felony ("PFDCF"). *See Roth v. State*, 901 A.2d 120 (Table), 2006 WL 1186806, at *1 (Del. May 2, 2006); (D.I. 12 at 1). The Superior Court sentenced Petitioner to two life sentences plus an additional 188 years of Level V incarceration. *See id.* The Delaware Supreme Court affirmed Petitioner's convictions on December 21, 2001. *See Roth*, 788 A.2d at 111.

On September 13, 2004, Petitioner filed in the Superior Court a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 13-9) The Superior Court dismissed the Rule 61 motion on June 13, 2005, and the Delaware Supreme Court affirmed that decision on May 2, 2006. (D.I. 13-1 at 12, Entry Nos. 118 and 121; D.I. 13-11); *see Roth*, 2006 WL 1186806, at *3.

On September 28, 2016, Petitioner filed a second Rule 61 motion, which the Superior Court summarily dismissed on January 25, 2017. (D.I. 13-17); *see State v. Roth*, 2017 WL 477966, at *3 (Del. Super. Ct. Jan. 25, 2017). Petitioner did not appeal that decision. (D.I. 12 at 2)

On April 18, 2017, Petitioner filed a motion to recuse the Superior Court judge who denied his second Rule 61 motion, and then he filed a third Rule 61 motion on July 13, 2017. (D.I. 13-1 at 13, Entry Nos. 128 and 129) The Superior Court granted Petitioner's recusal motion and referred the case to another Superior Court judge. (D.I. 13-1 at 14, Entry No. 133) On October 27, 2017, the newly assigned judge dismissed Petitioner's third Rule 61 motion as procedurally barred. (D.I. 13-20) The Delaware Supreme Court affirmed that decision on April 26, 2018. *See Roth v. State*, 185 A.3d 691 (Table), 2018 WL 1996452, at *1 (Del. Apr. 26, 2018).

Petitioner filed his original habeas application in this Court in June 2018, followed by an amended habeas application in September 2018 (collectively referred to as "Petition"). (D.I. 1; D.I. 6) The Petition asserts the following two grounds for relief: (1) the State knowingly used perjured testimony to obtain Petitioner's conviction; and (2) Petitioner is actually innocent. (D.I. 1; D.I. 6)

## II. ONE YEAR STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

2

>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner does not assert, and the Court cannot see, any facts triggering the application of § 2244(d)(1)(B),(C), or (D). Therefore, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), ), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed Petitioner's convictions on December 21, 2001, and he did not file a petition for a writ of certiorari in the United States Supreme Court. As a result, Petitioner's convictions became final on March 21, 2002. Applying the one-year limitations period to that date, Petitioner had until

3

March 24, 2003 to timely file a habeas petition.[2] *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run). Petitioner, however, did not file the instant Petition until June 14, 2018,[3] a little more than fifteen years after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The Court will discuss each doctrine in turn.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *Id.* at 424. The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

---

[2]Since the one-year limitations period ended on a weekend, Petitioner had until the end of the day on Monday March 24, 2003 to file his Petition. *See* Fed. R. Civ. P. 6(a)(1),(3).
[3]Pursuant to the prisoner mailbox rule, the Court adopts June 14, 2018 as the filing date because that is the date on Petitioner's certificate of mailing. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

4

The limitations clock in this case started to run on March 22, 2002, and ran without interruption until it expired on March 24, 2003. None of Petitioner's three Rule 61 motions statutorily toll the limitations period because they were filed after the expiration of the limitations period. Therefore, the instant Petition is time-barred, unless equitable tolling applies.

## B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, a petitioner's obligation to exercise diligence "does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period [the inmate] is exhausting state remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *See Holland*, 560 U.S. at 651-52. As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013).

Here, Petitioner asserts that the limitations period should be equitably tolled because he is actually innocent. Specifically, he contends that the State "deliberately failed to correct

5

knowingly false testimony of the only eyewitness [Abraham Ayala] and then knowingly use[d] the false eyewitness testimony during closing argument to obtain a tainted conviction." (D.I. 6 at 15) Petitioner's allegation of perjury actually stems from the testimony that was offered in the subsequent criminal trial of his co-defendant father ("Roth Sr."). (D.I. 15-11 at 2-5) At Petitioner's trial, Ayala testified that after hearing shots from inside the grocery store, he saw one "guy" with a long black jacket, a mask, gloves, and a black gun. (D.I. 13-2 at 95) Ayala described the man as being shorter than him and that he could not see the man's face. (*Id.* at 98) Ayala saw the short guy run around inside the store. (*Id.* at 100) Then, Ayala returned to his truck and watched two men leave the store. (*Id.* at 101) Ayala testified that the men were not wearing masks at this point, and. "I see their faces, but, I mean, not like this, because, I mean, they was like this and turned to the left, ..., I can't see their faces." (*Id.* at 102) Ayala stated that the shorter robber did not have facial hair. (*Id.* at 103) At Roth, Sr.'s subsequent trial, in addition to Ayala's testimony that the shorter man had no facial hair, Detective Bramble testified that Ayala's statement to police was that he did not see the robbers' faces. (D.I. 15-11 at 2-5) Petitioner asserts that Detective Bramble's testimony during Roth Sr.'s trial that Ayala did not see the robber's face constitutes "new evidence" demonstrating that the State offered perjured testimony at his trial, which also demonstrates his actual innocence and warrants equitable tolling.

In *McQuiggin v. Perkins*, the Supreme Court held that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). Nevertheless, "tenable actual-innocence gateway pleas are rare," and a petitioner only meets the threshold

6

requirement by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In the Third Circuit, evidence is "new" for the purposes of the *Schlup* standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence,[4] except in situations where that evidence was not discovered due to the ineffective assistance of trial counsel. *See Houck v. Stickman*, 625 F.3d 88, 93-94 (3d Cir. 2010). In turn, when determining if a petitioner's new evidence shows it is "more likely than not that no reasonable juror would have convicted him," a court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006).

In this case, the Court is not persuaded that Petitioner has presented a viable claim of actual innocence sufficient to equitably toll the limitations period. Petitioner fails to note that, during direct examination, Ayala testified that the robbers were wearing masks when he first arrived at the grocery store and that he could not see their faces, but he could see their faces once they left the store because they had removed their masks at that point. (D.I. 13-2 at 24, 26) In addition, after Ayala testified, the State played the audiotape of Ayala's statement to Detective Bramble for the jury to hear (D.I. 13-2 at 45), in which Ayala told Detective Bramble that he did

---

[4]The circuits addressing the issue are split over what constitutes "new" evidence for *Schlup* purposes. The Eighth Circuit's interpretation of "new" evidence corresponds with the Third Circuit's, whereas the Seventh and the Ninth Circuits do not require the exercise of due diligence, and view "new" evidence as evidence that was not "presented" at trial. *See Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011) (collecting cases).

7

not see the faces of the men who robbed the store. (*See* D.I. 13-12 at 40; D.I. 13-13 at 21). Since the jury was aware of Ayala's inconsistent statements, Petitioner's instant contention does not amount to "new evidence" relating to Ayala's testimony. And, even if it were new evidence, to the extent there was any discrepancy in testimony, "[d]iscrepancy is not enough to prove perjury. There are many reasons testimony may be inconsistent; perjury is only one possible reason." *Lambert v. Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004). Finally, Petitioner himself acknowledges that his claim of innocence is "procedural, rather than substantive," and that his constitutional claim is "not based on his innocence, but rather on the prosecution's use of knowingly false testimony." (D.I. 6 at 15) Thus, the Court concludes that Petitioner has not provided new reliable evidence of his factual innocence sufficient to trigger equitable tolling under the *McQuiggan/Schlup* standard.

In addition, Petitioner's failure to explain why he waited until 2018 to file the instant Petition when the alleged discrepancy in Ayala's testimony occurred during Roth Sr.'s trial in 2001 precludes him from satisfying the diligence requirement for equitable tolling. To the extent Petitioner's failure to timely file the instant Petition was due to a mistake or lack of legal knowledge, neither excuse constitutes an extraordinary circumstance for equitable tolling purposes. *See LaCava*, 398 F.3d at 276 ("in non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the extraordinary circumstances required for equitable tolling"); *Simpson v. Snyder*, 2002 WL 1000094, at *3 (D. Del. May 14, 2002).

For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Accordingly, the Court will dismiss the instant Petition as time-barred.[5]

## III. PENDING MOTION

Petitioner filed a motion titled "Motion For Discovery" during the pendency of this proceeding. In the Motion, Petitioner contends that the Court should hold an evidentiary hearing with respect to his gateway claim of actual innocence, because his case "falls within the necessary purview of both [*Howell v. Sup't Albion SCI*, 978 F.3d 54 (3d Cir. 2020)] and *Schlup*." (D.I. 16 at 2) Given Petitioner's assertions, the Court construes the Motion as primarily requesting an evidentiary hearing along with any related necessary discovery ("Motion for Discovery/Evidentiary Hearing").

A district court's decision to conduct an evidentiary hearing on an actual-innocence gateway claim in a habeas proceeding is discretionary. *See Cristin v. Brennan*, 281 F.3d 404, 413 (3d Cir. 2002). The Court has already concluded that Petitioner's allegation of innocence does not constitute a viable gateway claim of actual innocence under *McQuiggan* and *Schlup*, and his reliance on the Third Circuit's recent decision in *Howell* does not alter the Court's conclusion. In *Howell*, "three of the prosecution's trial witnesses recanted their testimony, and [the Third Circuit held] that an evidentiary hearing was needed because their recanting cast[ed] significant doubt on the defendant's conviction, particularly when considered with another suspect's confession." *Keaton v. Sup't Greene SCI*, 845 F. App'x 153, 157 (3d Cir. 2021) (cleaned up). Here, however, there is no recantation of testimony or any confession, and

---

[5]Having concluded that the instant Petition is time-barred, the Court will not address the State's alternate reason for denying the Petition.

9

Petitioner has not provided any new evidence to cast doubt on his conviction. Accordingly, the Court will deny Petitioner's Motion for Discovery/Evidentiary Hearing.

## IV.  CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that the instant Petition is time-barred. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## V.  CONCLUSION

For the reasons discussed, the Court will dismiss the Petition as time-barred. An appropriate Order will be entered.